# O'Leary's Estate.

*Wills—Legacies—Interest on pecuniary legacies—Construction —Income.*

Where trustees under a will are given the entire real and personal estate of testator with direction to convert the same from time to time at their discretion, thus providing funds from which legacies are to be paid, and the trustees hold the personalty and postpone the conversion of the real estate beyond a one-year period for the advantage of the estate, the specific pecuniary legatees are entitled to interest on their legacies from one year from testator's death, and this is particularly true where the testator has given the income of most of such legacies.

Argued Oct. 16, 1916.  Appeal, No. 132, Oct. T., 1916, by Elizabeth Lawler, from adjudication of O. C. Allegheny Co., Feb. T., 1916, No. 188, in Estate of Frank A. O'Leary, Deceased.  Before Brown, C. J., Potter, Moschzisker, Frazer and Walling, JJ.  Affirmed.

Exceptions to adjudication.

Miller, J., filed an opinion, in part as follows:

After providing in the first paragraph of his will for certain specific legacies consisting of jewelry and watches, he provides in the second paragraph as follows:

"All the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath to William A. Hoeveler, John J. O'Leary, son of my brother, John, and to George C. Burgwin and to the survivor or survivors of them, their heirs and assigns, in trust nevertheless to sell the same from time to time for such prices and on such terms as they shall think proper and the same to convey and transfer to the purchasers absolutely and in fee simple without liability on the part of the purchasers to see to the application of the purchase-money, the proceeds of said sales to be distributed and paid out by my executors as hereinafter directed."

He then directs his executors to provide for a burial

vault or monument, to invest $12,000 in mortgages, the income thereof to be paid to his niece, and after her death over to parties named; exclusive of other specific legacies which have been paid, he directs and there remains unpaid the amount specified to be invested for the care of his burial lot in the cemetery $4,000, to the trustees to invest $12,000 and to pay the income to Mary O'Leary with remainder over; to the four children of Stella Hoeveler Kennedy each $2,000, to Dr. Walter B. Ure $1,000, to the trustee for Mrs. Herman Knake for life with remainder over $5,000, and the trustees to invest $6,000 and pay the interest to Anna A. Gerst for life with remainder over. The other pecuniary legacies were paid some time ago.

Decedent's estate consisted largely of real estate. At the time of his death and for some years thereafter litigation was pending touching his title to all this property, which at the expiration of several years was settled, vesting title in his estate. The properties are situated on Wylie avenue and Fifth avenue in what is known as the Hump District. The movement for the so-called cutting of the Hump started and has recently been completed, effecting very material changes in all these properties. Owing to the litigation described and the change in grade of the properties, sales thereof could not be made, the condition of the real estate market being an additional factor in preventing the making of actual sales, although the trustees continually had the properties on the market and were endeavoring to dispose of them. After the completion of the change in grade in this district with the consequent effect upon the properties, the trustees, not being able to sell, and in the exercise of their discretion borrowed $100,000, out of the proceeds of which they erected buildings upon these properties and have succeeded at the time of audit in procuring tenants therefor, promising a fair rate of income over and above the charges against the same.

The personal estate is not large in comparison with the

value of the real estate; it consisted of stocks and securities which in the judgment of the trustees could not be sold to advantage in the beginning of the administration and which were held by them pending a change in market conditions and which resulted, the record shows, in an increase over the appraised price of about $20,000 for the benefit of the estate. A large portion of the proceeds of the sales of these stocks was consummated during the years 1915 and 1916.

During all this time, the condition of the properties not producing paying tenants, the taxes and expenses of maintenance exceeded the income, and to meet these the trustees were compelled to borrow money on their notes and otherwise raise funds to keep the properties from loss. The litigation described pending at the time of decedent's death and the conflict of boundary lines, especially after new buildings were about to be erected, occasioned a great deal of investigation and adjustment between these properties and adjacent owners. The balance on hand consists of portions of the sales of the stocks and securities and of the proceeds of the mortgages given for the erection of the buildings and to maintain the property.

The pecuniary specific legatees claim interest beginning one year after the death of the testator. This is resisted by the residuary legatees on the ground that these legacies could be paid only by sales of the property and that the discretion vested in the trustees as to sales thereof, coupled with the fact that no sales could be made to advantage, indicate an intent on the part of the testator to give these legatees the amounts bequeathed only after funds were secured for the purpose of meeting the same.

The second paragraph of the will heretofore referred to clearly places the entire estate, real, personal and mixed, in the hands of the trustees with directions to convert the same from time to time at such prices and at such terms as they may think proper and thus provides

the funds from which the bequests shall be paid. This discretion, coupled with the fact that no negligence can be found against the trustees in the management of these properties, might bring the solution of the question of interest to the general rule that only when legacies are payable or can be paid does interest begin.

But it will be observed that legacies were payable out of personal as well as real estate and that holding the personalty was to the advantage of the estate. Why should the residuary legatees have the benefit of this increase as against the preferred pecuniary legatees? The discretion as to time of conversion does not control as to time of payment. If payment is postponed, it does not follow that interest is lost: Huston's App., 9 Watts. 472; Eichelberger's Est., 170 Pa. 242.

Persuasive as indicating testator's intent is the fact that he gives the income of the most of these legacies. A present gift of income as distinguished from corpus entitles the legatee to interest: Spangler's Est., 9 W. & S. 135; 2 Roper on Legacies, 172, also p. 1245. A gift of income is equivalent to an annuity and is always presently payable. From the character of the pecuniary legacies given and from the absence of any intent in the will to exempt these legacies from interest, the rule as laid down by the statute must govern, and interest must be allowed beginning one year after death. The gift of income here seems to distinguish this situation from the rule under the facts in Gunning's Est. (No. 3), 234 Pa. 148. If the contention of the residuary legatees were sustainable it would follow that if the preferred legatees who are entitled to income only should be dead now they could not have received any portion of the income bequeathed to them during the last eight years. Search does not reveal such intent on the part of testator.

*Errors assigned* were in dismissing exceptions to the adjudication, and in distributing interest to specific pecuniary legatees.

*Hill Burgwin,* of *H. & G. C. Burgwin,* for appellant.

*A. W. Henderson* and *A. V. D. Watterson,* for appellees.

PER CURIAM, January 8, 1917:

That the pecuniary legatees were entitled to interest on their respective legacies from one year from the testator's death is clearly demonstrated in the opinion of the auditing judge allowing it. For the reasons given by him for allowing it this appeal is dismissed, at appellant's costs.